| 131 | 447 |
| 216 | ²420 |

## ELIZ. LEMON ET AL. v. ELIZ. J. GRAHAM.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY.

Argued October 7, 1889—Decided February 3, 1890.
[To be reported.]

1. While the word "heirs," or its equivalent, is necessary in a deed to vest a fee-simple estate in the grantee, an instrument not itself containing words of inheritance may create such an estate by a reference to another instrument in which the requisite words are found, the reference showing the intent of the grantor and importing the words of inheritance into the grant made by him.

2. When the grantee in a deed in fee-simple, in the usual form, placed on the back of it an assignment, under his hand and seal, of all his right, title, interest, etc., " in and to the within deed," to his son, " for value received," and then delivered it to the son, the surrounding circumstances indicating an intention to transfer the fee-simple, such informal assignment was sufficient to effect that purpose.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 37 October Term 1889, Sup. Ct.; court below, No. 183 September Term 1885, C. P.

On June 24, 1885, Elizabeth Lemon and others brought ejectment against James Ramsey for a tract of land in Porter township. The defendant Ramsey disclaimed title, and on motion of Elizabeth Jane Graham she was made the defendant upon the record. Issue.

At the trial on December 6, 1887, the following facts were shown on the part of the plaintiff:

On September 2, 1862, James Ramsey the original defendant became the owner of the land in dispute by virtue of a deed from John Ramsey, bearing date that day and conveying the land to James Ramsey, his heirs and assigns. On August 3,

1866, James Ramsey executed the following instrument indorsed on the back of the deed to himself from John Ramsey, delivering said deed with this indorsement to his son, Allen Ramsey:

"I, James Ramsey, do hereby assign and set over all my right, title, claim, interest, property and demand whatsoever, in and to the within deed, unto Allen Ramsey, for value received. Witness my hand and seal this 3d day of August. A. D. 1866.　　　　　JAMES RAMSEY. [SEAL.]"

"Attest: GEO. BISH."

After the execution and delivery of this instrument, James Ramsey remained in possession of the land. Allen Ramsey died in 1870, leaving the plaintiffs as his heirs at law. On March 12, 1884, James Ramsey executed a deed for the same land to his daughter, Elizabeth Jane Graham.

George Bish, the scrivener of the assignment from James Ramsey to Allen Ramsey, being called upon the stand, the plaintiffs made the following offers:

We propose to prove by this witness, Mr. George Bish, that the agreement between James Ramsey and Allen Ramsey of August 3, 1866, was that James should sell and convey to Allen an absolute estate in fee in the land in dispute, and that the witness, who reduced their agreement to writing, made a mistake by omitting to use such words as were necessary to express their real contract and to convey an estate in fee as the parties intended; that the whole consideration was subsequently paid to the vendor by the vendee, and that the parties to said contract always treated the transaction as an absolute bargain and sale of the land in fee.

Mr. Stewart, for defendant: We object to that as incompetent and irrelevant. The plaintiffs have offered the paper, and there is nothing in that assignment that would render parol testimony necessary or competent. It is incompetent on a trial of this kind to reform a paper of this nature in that way.

By the court: The objection is sustained; exception.[4]

Mr. Wier, for plaintiffs: We further propose to prove that the contract between James Ramsey and Allen Ramsey was an absolute bargain and sale of the land in dispute; that the parties went to George Bish, an acting justice of the peace, intending he should draw an absolute conveyance for the land in

fee-simple to Allen Ramsey; that the justice drew the writing of August 3, 1866, supposing it was an absolute conveyance in fee-simple; that the deeds were delivered with that understanding; that all parties so understood it, even at the time of filing a bill to perpetuate testimony at No. 1 February Term 1883, in the Common Pleas of Jefferson county.

Mr. Corbet, for defendant: We object to that for the reason that it is incompetent and irrelevant.

Mr. Wier, for plaintiffs: We propose to follow the proof proposed in our offer by showing that Mrs. Graham, the defendant, knew all about the contract; that she is a daughter of James Ramsey, and that she and her father subsequent to the death of Allen Ramsey conspired together for the purpose of defeating the title of Allen Ramsey's orphan children; that the defendant, in connection and collusion with James Ramsey, the father, entered into this arrangement and conspiracy for transferring the title to her, with the express purpose of defeating the plaintiffs' title under this contract.

Offer objected to by defendant's counsel as incompetent and irrelevant.

By the court: Objection sustained; testimony rejected; exception.[5][6]

At the conclusion of the testimony for the plaintiffs, the court, Wilson, P. J., on motion of the defendant, entered judgment of compulsory nonsuit, and subsequently, after argument, overruled a motion to take off the nonsuit, without opinion filed. Thereupon the plaintiffs took this appeal, assigning for error:

1. The refusal to take off the nonsuit.

4–6. The overruling of plaintiffs' offers.[4 to 6]

*Mr. Alexander C. White* (with him *Mr. J. M. Garrison*), for the appellants:

1. The court erred in ruling that the assignment from James Ramsey, to Allen Ramsey, conveyed only a life-estate. An assignment is the transfer of one's entire interest, and the assignee stands to all intents and purposes in the place of the assignor: 2 Bl. Com., 326; Wharton's L. Dict., tit. Assignment. An assignment indorsed upon a deed borrows and

adopts the language of the instrument; if the word "heirs" be used therein, the assignment transfers the fee: Washburn on Real Prop., 57; Shep. Touchstone, 101; Com. Dig., Estates, A. 2; 2 Preston on Estates, 2. This is recognized as law in Lytle v. Lytle, 10 W. 260; Brink v. Michael, 31 Pa. 165.

2. The question, after all, is one purely of intention, to be determined from the instrument itself. In the case under consideration, James Ramsey clearly intended to convey the fee. His reference to the deed was not only for a description of the property, but also for a definition of the tenure under which his assignee was to hold. If, however, it be held that the assignment, as written, conveyed only a life estate, then our offers set out enough to reform any deed. As the judgment is a compulsory nonsuit, our testimony and offers, and every reasonable inference of fact arising therefrom, must be taken as true, in this appeal: Elkins v. Susq. M. F. Ins. Co., 113 Pa. 386.

*Mr. W. F. Stewart* (with him *Mr. H. H. Brocius* and *Mr. Charles Corbet*), for the appellee:

1. The assignment could at most convey only a life estate to Allen Ramsey, and as he is dead any such estate is determined. There is nothing ambiguous in the language of the assignment. There is not a word in it that could convey a fee. A title in fee ought not to be allowed to pass by such a paper. The word "heirs" is essential to the passing of more than a life-estate: Rapalje & Lawrence's L. Dict., word Fee; Gray v. Packer, 4 W. & S. 17; Clayton v. Clayton, 3 Binn. 476; Adams v. Ross, 1 L. C. on Am. Law of Real Prop. 11. The word heirs in a deed is a term of art: Hileman v. Bouslaugh, 13 Pa. 344; and it is not competent to show an actual intention contrary to the legal effect of a deed from which it is omitted: Gray v. Packer, supra; nor will even an expression in the deed itself of an intent to pass the fee supply the place of that word: Adams v. Ross, supra.

2. The citation from Washburn on Real Prop., 57, is not applicable here, for in this assignment there is nothing that can be construed as a borrowing of the words of the former deed. The present is not so strong a case as Brink v. Michael, 31 Pa. 165. It was there held that the instrument must bear on its

face the intention to borrow the requisite words, and the same principle is sustained by Newman's App., 35 Pa. 339; Lytle v. Lytle, 10 W. 259. It is not the place where the words are written, but the words themselves, that give force to a deed; merely writing them on the back of another deed will not give them the same force and effect. If the instrument is intended to convey a fee, it must say so; and if it intends to borrow or adopt the words of another instrument, it must say so; not by implication, but by actual words. Any less strict requirement than this is not in accord with our system of land titles, and would introduce uncertainty and confusion.

3. "Where no ambiguity arises out of the terms employed, you shall not add to, contradict or vary the language of the written instrument:" Barnhart v. Riddle, 29 Pa. 92, 96, approved in Hollenback's App., 121 Pa. 322. The paper offered is in plain and unambiguous language, clearly conveying to Allen Ramsey a life-estate only. The testimony offered for the purpose of showing by parol that the parties intended this instrument should pass a fee-simple estate, was inadmissible, being an attempt to contradict and vary the plain terms of the instrument. It is incompetent to reform a paper of this kind in such a way by parol testimony, and there was no error in rejecting the evidence offered, as it was inadmissible and improper even if true.

OPINION, MR. JUSTICE WILLIAMS:

The title to the land in controversy was, in 1866, vested in James Ramsey, under whom both parties claim. In August of that year he made an assignment to his son Allen Ramsey, which was written on the back of the deed under which he acquired title, and delivered the paper on which the deed and the assignment were written to his son. The assignment was in these words:

"I, James Ramsey, do hereby assign and set over all my right, title, claim, interest, property, and demand whatsoever in and to the within deed unto Allen Ramsey, for value received. Witness my hand and seal this 3d day of August, 1866.                              JAMES RAMSEY. [SEAL.]"

"Attest: GEORGE BISH."

Eighteen years later, in 1884, he conveyed the same land by

deed to his daughter, Elizabeth Jane Graham. The father was in possession until his death. Allen Ramsey died before his father. This action was brought by the heirs at law of Allen. The defence alleges that Allen took only a life-estate in the land, under the assignment made by his father to him, and that on his death his title was extinguished, the fee having passed to Mrs. Graham under the deed made to her in 1884.

Two questions were raised on the trial, and are now for determination. The first relates to the construction and legal effect of the assignment to Allen Ramsey. The other is over the right of the plaintiffs to show by George Bish, the scrivener by whom the assignment was drawn, and the subscribing witness to its execution, what the parties intended and agreed upon, what they asked him to put in writing, and what he undertook to do for them. The learned judge of the court below held that the assignment conveyed only a life-estate, and that evidence offered to show that a fee-simple was intended, and that the failure of the scrivener was by mistake of his own, was incompetent.

We do not doubt the general rule laid down by the learned judge, that the word "heirs," or its equivalent, is necessary in a deed in order to vest a fee-simple in the grantee. The rule is as old as the common law, and, as applicable to a formal deed, is well understood, and constantly applied. It is the invariable practice of professional conveyancers to describe the estate which it is intended to convey, by apt words. If it is a fee, the words of inheritance are introduced. If it is for the life of the grantee or of another, the character and duration of the estate are clearly set forth. Instruments having no apt words of description in them are not often met with, but when encountered are found, like the one before us, to be the work of men who have no professional training, and no knowledge of the principles of conveyancing. They are almost always intended to convey a fee-simple, and fail to do so because of the omission of the necessary technical words, the importance of which was unknown to the scrivener and to the parties. It is for this reason that the courts have relieved against the mistakes so made, when the proofs were sufficient to justify them in so doing, and have applied the general rule only to such cases as came clearly within its operation. Thus,

the courts both in England and in this country have held that the word "heirs" was not necessary to pass an absolute estate in fee when there was a gift by will, but that the intent to vest a fee may be gathered from the will as a whole: Little's App., 81 Pa. 190. So it has been held that an executory contract without words of inheritance will pass a fee-simple in equity: Ogden v. Brown, 33 Pa. 247. And it was held in the case last cited that the effect of an informal instrument transferring an interest in real estate depends, not on any particular words or phrases found in it, but on the intention of the parties as collected from the whole instrument. This case was followed in the recent case of Dreisbach v. Serfass, 126 Pa. 32.

But the effort to avoid the rigor of the rule where its application is not obligatory began long ago. Where technical words are supplied by reference to another instrument which contains them, the case was recognized as an exception as early as the days of Lord COKE; and this exception was recognized by our own case of Lytle v. Lytle, 10 W. 259, and followed. The rule was plainly laid down in the last case cited that a fee-simple may be created in Pennsylvania, by deed without words of inheritance, by a reference to another instrument in which such words are found; and it was made clear that such was the rule in England at a very early date. The following examples are from Sheppard's Touchstone. A conveyance was made by deed in which the grantor recited that "B. hath enfeoffed him, (the grantor,) of white acre, to have and to hold to him and his heirs, . . . . . and that as fully as B. has given white acre to him and his heirs he doth grant the same to C." Here the word "heirs" is supplied in the grant to C. by the reference to the grant from B., and C. takes a fee-simple without the appearance of words of inheritance in the. grant to him. Another case is that of a grant of two acres of land "to have and to hold, the one acre to A. and his heirs, and the other acre to B. in forma predicta." Shep. Touch., 101. Here B. takes a fee-simple by virtue of the reference to the grant to A., in which words of inheritance appear. The reference shows the intent of the grantor, and is held to import the words of inheritance into the grant to B.

In the light of these cases, let us look once more at the assignment before us. We find the assignor held a deed in

fee-simple, in the usual form, made in 1862 by another son, John. On the back of this deed the assignment is written. It refers for a description of the estate granted to the terms of the deed upon which it is indorsed, and professes to transfer to the assignee all the right, title, interest, property, claim, and demand of the assignor "in and to the within deed." What was the title of the assignor? That question can only be answered by an examination of the description of it in the body of the deed; but, whatever it was, the assignor undertakes to transfer it to his assignee. Not a part of it; not a life-estate carved out of it, but "all the right, title, interest, property, claim, and demand" of the assignor. Nothing was left. He transferred his whole estate, as vested in him by virtue of the deed, by the reference to its terms in the assignment. He said, in substance and in legal effect, "as fully as the within deed clothes me with the title to the land described in it, so fully and completely do I transfer the same land to my son Allen. He is to take from me the title which I took from my grantor." The technical words that are wanting in the assignment standing by itself, are thus supplied by the reference to "the within deed" for a description of the estate; and the fee-simple which the father took by the deed from John he transfers by his assignment to Allen. This is what was intended; and the scrivener wrought better than he knew in making his reference to "the within deed" for a description of the "right, title, estate, interest, property, claim and demand" of the assignor. If Allen bought a life-estate only, it is reasonable to suppose that he would have taken possession; but he left his father in possession, and in the full enjoyment of its proceeds. If the father understood that he parted with a life-estate only, and retained the fee, he would naturally keep the deed under which he acquired title; but he indorsed his assignment upon that deed, and delivered it so indorsed, to Allen. We are satisfied, therefore, that the parties intended just what our construction of the assignment shows they did, viz., to convey the fee-simple to Allen. In this view of the case, it becomes unnecessary to consider the other question at any length.

The judgment is reversed, and a venire facias de novo awarded.